886 A.2d 667

Benjamin STANTON and Elaine Stanton, his Wife, as Parents and Natural Guardians of Jesse Stanton, a Minor, and individually in their own right,

v.

LACKAWANNA ENERGY, LTD. and Pennsylvania Power and Light Co.,

v.

Benjamin Stanton and Elaine Stanton, his Wife, as Parents and Natural Guardians of Jesse Stanton, a Minor, and individually in their own right,

Appeal of Benjamin Stanton and Elaine Stanton, his Wife, as Parents and Natural Guardians of Jesse Stanton, a Minor, and individually in their own right.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2004.

Decided Nov. 23, 2005.

552

554

Michael Gallacher, Scranton, for Benjamin and Elaine Stanton, appellants.

John Michael Mulcahey, Scranton, for Pennsylvania Power and Light Co., appellee.

Timothy E. Foley, Scranton, for Lackawanna Energy, Ltd., appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This matter involves a claim against Pennsylvania Power and Light Company ("PP & L"), initiated by Benjamin and Elaine Stanton, the parents of Jesse Stanton, a minor (collectively, "appellants" or "the Stantons"), who was injured on undeveloped land contained within an easement held by PP & L, while participating in recreational motorbike riding.[1] Prior to the start of trial, PP & L moved for summary judgment, relying on the provisions of the Recreational Use of Land and Water Act ("the RULWA" or "the Act"), 68 P.S. §§ 477-1—477-8, which provides immunity to owners of undeveloped land who permit the public, without charge, to use the land for recreational purposes. 68 P.S. § 477-3 and 4. The trial court, per the Honorable Michael Barasse, denied PP & L's motion,

---

1. The Stantons also included the owner of the land, Lackawanna Energy, Ltd. ("Lackawanna"), in their suit. The Stantons have settled with Lackawanna, however, and this matter only concerns their claims against PP & L.

finding, *inter alia,* that a jury question existed concerning whether PP & L, as an easement holder, was entitled to the protections that the RULWA provides to property owners. On permissive appeal of the court's interlocutory ruling, the Superior Court reversed and remanded for entry of summary judgment in favor of PP & L. This Court then granted limited review in this matter to consider whether an easement holder, such as PP & L, is entitled to the protection provided by the RULWA against liability for personal injury. For the reasons stated below, we agree with the Superior Court's determination and find that, as a matter of law, the RULWA entitles an easement holder, who is a possessor of land made available to the public for recreational purposes, *see* discussion *infra,* to the same protections provided to a land owner. Accordingly, we affirm.

The facts, viewed in the light most favorable to appellants, the non-moving party, are as follows. The property in question consists of one hundred twenty-three acres of largely undeveloped land, covered in mostly brush and trees, and transected by dirt trails used by area residents for recreational purposes.[2] Lackawanna Energy, Ltd. ("Lackawanna") owns the entire tract, but in 1982, PP & L purchased a permanent easement over a seventy-foot strip of the land for construction of electric power transmission towers and maintenance of the attached power lines. The power lines on the easement are serviced by an access road at the entrance to which PP & L erected a steel swing-arm gate. The gate, which is painted bright yellow, was installed at the request of Lackawanna to reduce the incidence of illegal dumping and vandalism.

On July 30, 1994, the minor appellant, Jesse Stanton ("Jesse"), who was 10 years old at the time, entered the land on a motorbike for the purpose of recreational riding. Upon cresting a hill, Jesse encountered the swing-arm gate. Although Jesse had ridden a motorbike on the land numerous

2. The parties do not dispute that the public was directly or indirectly invited or permitted to use the land for recreational purposes without charge. *See* 68 P.S. § 477–4.

times before when the gate was left unlocked, this time it was locked. When Jesse saw the gate, he attempted to avoid it by swerving, at which time he hit a large rock protruding from the ground. This caused Jesse to be thrown off of his motorbike and into the gate. As a result of the collision, Jesse suffered a concussion and multiple fractures and dislocations that required surgical reconstruction.

On May 24, 1996, Benjamin and Elaine Stanton initiated this litigation in their own right and on behalf of Jesse by way of a complaint alleging that Lackawanna and PP & L negligently placed or allowed the placement of the swing-arm gate, negligently closed the gate when on prior occasions it had remained open, and maintained an attractive nuisance. The matter was scheduled for trial and, following a pretrial conference, Lackawanna settled with the Stantons. PP & L opted instead to move for summary judgment, asserting that it was immune from the Stantons' claims under the RULWA, which states, in part, that:

> Except as specifically recognized or provided in section 6 of this act, [ ] an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477-3 (footnote omitted). Appellants then challenged whether PP & L, as an easement holder, qualified as an "owner" of the land, and whether the gate qualified as "land" under the RULWA.

The trial court determined that, because the gate did not enhance the value of the land and did not require regular maintenance, it qualified as "land" under the RULWA. However, the trial court also determined that the question of whether PP & L qualified as a RULWA "owner" was a disputed factual question for the jury to decide. In addition, the trial court found that there was a question of fact as to whether PP & L willfully failed to warn Jesse of a dangerous condition, thus depriving PP & L of immunity under Section 6

of the RULWA.[3] Accordingly, the trial court denied PP & L's motion for summary judgment. It did so, however, without prejudice to PP & L's right to present its RULWA immunity defense as a factual matter at trial. The trial court then certified its order for appeal as one involving a controlling question of law as to which there was substantial ground for disagreement, pursuant to 42 Pa.C.S. § 702(b).[4] PP & L filed a Petition for Permission to Appeal with the Superior Court, pursuant to Pa.R.A.P. 1311(b) (governing interlocutory appeals by permission). The Superior Court granted the petition, and PP & L filed a notice of appeal. The Stantons did not seek interlocutory review of the trial court's order to the extent it was contrary to their interests—*i.e.*, to the extent the court had ruled that the gate was a part of the land for purposes of RULWA owner immunity.

In its brief to the Superior Court, PP & L argued that the trial court erred in denying summary judgment in its favor, addressing all three issues resolved by the trial court, including the gate/land issue resolved in its favor. Although no reported cases addressed the specific question of whether the holder of an easement is an "owner" under the RULWA, PP & L relied on several cases finding that a holder of an easement is a possessor of property and is held to the same duty of care as an owner of property. PP & L argued that it was an owner of the land because it was either an occupant or

3. Section 6 provides an exception to the grant of immunity, stating that the RULWA does not limit liability which otherwise exists: (1) for willful or malicious failure to guard against a dangerous condition, use, structure or activity; or (2) for injury suffered in any case where the owner of land charges admission to use the land for recreational purposes. 68 P.S. § 477-6.

4. Section 702(b) provides that a trial court may issue an order certifying that its interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate determination of the matter. It is then within the discretion of the appellate court to permit the appeal. *See Stone v. York Haven Power Co.*, 561 Pa. 189, 749 A.2d 452, 455 n. 2 (2000). In its opinion, the trial court addressed all three questions (whether the gate was land; whether PP & L was an owner; and the failure to warn), without identifying whether it believed all involved qualifying controlling questions of law under Section 702(b).

a party in control of the premises. PP & L further argued that the placement of the yellow swing-arm gate on the property within its easement did not preclude it from the benefit of immunity under the RULWA, and that the Section 6 failure to warn exception was inapplicable to the situation at hand. The Stantons responded that PP & L was not an owner under the RULWA because it only held an easement; that, in any event, the gate was not covered by RULWA immunity; and that, even if the RULWA did apply to PP & L and the gate, the Section 6 failure to warn exception to RULWA immunity applied to this matter.

A panel of the Superior Court subsequently issued a published opinion and order, reversing the order of the trial court and remanding for entry of summary judgment in favor of PP & L. The Superior Court looked to the plain language of the RULWA and to its express policy objective—*i.e.*, to encourage owners of land to make such land available to the public for recreational purposes, by limiting their potential tort liability. On the issue of whether PP & L is an "owner" for purposes of the RULWA protection, the panel noted that PP & L could be considered an owner if the easement rendered it an "occupant or person in control of the premises."[5] The panel then consulted the Restatement (Second) of Torts, Section 328E, which states that if an easement holder has sufficient control over the premises, it may incur liability to third parties for injuries suffered upon the land. The panel concluded that such liability would cause easement holders to bar access to their land, thus contravening the express purpose of the RULWA. Taking the prospect of liability into account, the Superior Court panel concluded that the meaning of the term "occupant or person in control" under the RULWA should be deemed to be co-extensive with the liability-based definition of "possessor" under the Restatement § 328E. Therefore, the panel found that, if an easement holder exercises sufficient control to be subject to tort liability as a possessor under the

5. Section 2, the definitional section of the RULWA, provides that: "Owner means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." 68 P.S. § 477-2.

Restatement § 328E, it must also be deemed an owner entitled to the immunity protections of the RULWA.

The Superior Court next addressed PP & L's argument regarding its alleged willful or malicious failure to warn, under the RULWA Section 6 exception, 68 P.S. § 477–6, finding that appellants did not raise this claim in their complaint. The Superior Court further found that appellants had failed to demonstrate willful behavior on PP & L's part, and therefore determined that appellants' complaint was insufficient as a matter of law to plead the Section 6 exception. The Superior Court concluded that the trial court erred in its finding that issues of material fact prohibited entry of summary judgment on either of these questions, and remanded for the trial court to enter summary judgment in favor of PP & L. The Superior Court did not address the trial court's finding that the gate qualified as land for purposes of RULWA immunity.

The Stantons subsequently petitioned this Court for allowance of appeal, which we granted, but limited to the following single question:

> Did the Superior Court improperly conclude that Pennsylvania Power and Light Company was an "owner" of land entitled to protection under the Recreational Use of Land and Water Act, 68 P.S. §§ 477–1—477–8, where it held only an easement?

In their brief to this Court, the Stantons now argue that PP & L, as a mere easement holder, is not an "owner" of the land, and therefore cannot benefit from the protection against tort liability provided by the RULWA. The Stantons argue that the RULWA is to be strictly interpreted and that easement holders are not specifically enumerated as a protected class within the plain terms of the statutory definition. The Stantons acknowledge that the Pennsylvania courts have not yet addressed the applicability of the RULWA to easement holders, but forward case law from two other jurisdictions that have done so. These jurisdictions, argue the Stantons, each recognize that it is within the province of the legislature, not

the judiciary, to include or exclude easement holders under the RULWA protection.

The Stantons first rely upon a decision from the Maryland Court of Appeals, and argue that it found that Maryland's original definition of "owner," as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises," did not include an easement holder. Appellants' Brief at 12 (citing *Fagerhus v. Host Marriott Corp.,* 143 Md.App. 525, 795 A.2d 221 (2002)). The Maryland legislature later amended that definition to specifically include "the owner of any estate or other interest in real property, whether possessory or nonpossessory, including the grantee of an easement." *See* Md.Code, Natural Resources, § 5–1101(e). The Stantons argue that, because Pennsylvania uses the same general definition of "owner" that Maryland did before its amendment, no RULWA protection can be provided in Pennsylvania under that definition. The Stantons also rely on a decision from the California Court of Appeal, which found that a pre-amendment definition of "owner" applied only to a holder of an exclusive possessory interest in the property. Appellants' Brief at 14 (citing *Jackson v. Pacific Gas & Electric Co.,* 94 Cal.App.4th 1110, 1117, 114 Cal.Rptr.2d 831 (2001)). Based on their analysis of these cases, the Stantons argue that it is purely and exclusively up to the Pennsylvania General Assembly to change and expand the RULWA definition of "owner," and that the courts have no authority to expand the narrow legislative grant of immunity.

The Stantons also argue that PP & L is not an owner of the land because, as an easement holder, it has no right or ability to open or close the land to public recreational use. The Stantons further argue that the scope of the easement held by PP & L is limited to operation and maintenance of electric lines, and that PP & L could not expand the scope of the easement to allow public use. Because PP & L lacked authority to permit or deny use of the land by others, the Stantons argue that PP & L cannot be afforded the protection of the RULWA.

PP & L responds that, because it owns a possessory interest in the subject property in the form of a permanent easement, it is an "owner" under the RULWA and therefore is entitled to its protection. PP & L argues that the Stantons' reliance on Maryland and California case law is misplaced. PP & L argues that, in point of fact, the Maryland courts have not addressed the issue of whether an easement holder is an owner under Maryland's pre-amendment statute. Rather, the case cited by the Stantons addressed the issue of whether a property manager with a contractual duty to manage and maintain the premises, on behalf of a land owner, would be considered an owner under the Maryland statute. Appellee's Brief at 9 (citing *Fagerhus*, 795 A.2d at 231–32). PP & L further argues that the California case is irrelevant here because the California pre-amendment statute required an "owner" to have "any estate in real property." That definition is vastly different from the statute in force in Pennsylvania, which includes the language "occupant or person in control of the premises." Appellee's Brief at 9–10 (citing *Jackson*, 94 Cal.App.4th at 1117, 114 Cal.Rptr.2d 831).

PP & L also argues that this Court should interpret the RULWA pursuant to the Pennsylvania Statutory Construction Act, 1 Pa.C.S. § 1901 *et seq.*, and construe the language according to its common and approved usage. As the RUL-WA does not specifically define either "occupant" or "person in control of the premises," PP & L urges us to use common dictionary definitions of these terms, which demonstrate that PP & L was an occupant and a person in control of the premises. PP & L also argues that consideration should be given to the policy objective of the RULWA: to encourage owners of land and water areas to make those tracts available to the public for recreational purposes by limiting their potential tort liability. PP & L also notes that this Court has previously found that an easement holder is generally subject to tort liability for injuries occurring on its easement precisely because it is considered a possessor of the premises and is required to maintain its easement and any equipment within it. Furthermore, PP & L submits that it is a possessor of the

land pursuant to the Restatement § 328E, which defines a possessor, in part, as one who occupies the land with the intent to control it.

PP & L also notes the contradictory nature of the Stantons' arguments because the Stantons state on one hand that PP & L had no ability to permit Jesse's use of the land, but then allege that PP & L was negligent for failing to post no trespassing signs, for placing only one gate upon the property, for failing to exclude the public from the property over which it had an easement, and for failing to provide an alternate safe egress route. PP & L points out that the Stantons have brought this suit precisely based on the fact that PP & L is an occupier and possessor of the land. PP & L argues that it cannot be held liable as an occupant of the property and, at the same time, be denied appropriate defenses which are available to an occupant.

 This Court granted discretionary review because of the widespread public importance of the question of the applicability of the RULWA to easement holders. Generally, in an appeal from a grant or denial of summary judgment, the appellate court's review is limited to determining whether the lower court committed an abuse of discretion or an error of law. *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166, 170 (2005). The specific issue here is one of statutory construction; review of such a question of law is plenary. *Id.* Moreover, with respect to this Court's review of the Superior Court's discharge of its reviewing function, our standard of review is plenary and non-deferential.

 The General Assembly made plain that the RULWA was enacted "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." 68 P.S. § 477–1. *See Stone v. York Haven Power Co.*, 561 Pa. 189, 749 A.2d 452, 455 (2000); *Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673, 674 (1996). To encourage owners to make such land available to the general public, the RULWA provides that:

an owner of land owes no duty of care to keep premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477–3. In other words, the RULWA provides such owners with immunity from ordinary negligence liability so long as the land or water area is provided to the public for recreational purposes free of charge. Liability may attach, however, if an injury occurring on the land or water is the result of a "wilful (*sic*) or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 68 P.S. §§ 477–4, 477–6(1); *Stone,* 749 A.2d at 455; *Lory,* 674 A.2d at 675. In addition to providing an incentive to open land to the public, the grant of ordinary negligence immunity recognizes "the impracticality of keeping large tracts of largely undeveloped land safe for public use." *Stone,* 749 A.2d at 455 (citing *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1, 8 n. 17 (1986)).

The RULWA defines "land" as "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty." 68 P.S. § 477–2(1). The Act further defines "recreational purpose" as including, but not limited to, "hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites." *Id.* § 477–2(3). For purposes of this appeal, there is no issue as to whether the area where Jesse was injured qualifies as "land." [6] Likewise, there is no doubt that his

---

**6.** The Stantons did argue before the trial court that the swing-arm gate did not qualify as land for purposes of RULWA immunity. The trial court determined that it *was* a part of the land. The Stantons did not seek interlocutory review of that legal determination. The issue was not addressed by the Superior Court on appeal, although both parties briefed it. The Stantons then raised the issue in their Petition for Allowance of Appeal to this Court, alleging that the Superior Court erred in failing to address it. We declined to grant appeal on the issue. Accordingly, we will not pass on whether the swing-arm gate qualifies as a part of the land for RULWA purposes.

activity—riding a motorbike for pleasure—was for a recreational purpose. Rather, the dispute concerns PP & L's ownership status, *i.e.*, whether an easement holder is entitled to the "owner" immunity provided by the RULWA.

■ While this Court has had several opportunities to address the definition of "land" under the RULWA, *see Stone*, 749 A.2d 452; *Mills v. Commonwealth of Pennsylvania*, 534 Pa. 519, 633 A.2d 1115 (1993); *Rivera*, 507 A.2d 1, this is our first examination of the definition of "owner." Pursuant to the Pennsylvania Statutory Construction Act, we must construe the language of a statute according to the rules of grammar and accord each word its common and approved usage. 1 Pa.C.S. § 1903. We must also keep in mind that this Court has been careful not to allow the scope of the RULWA protection to extend beyond the legislative intent, because to do so would "thwart basic principles of tort liability." *Stone*, 749 A.2d at 455 (quoting *Mills*, 633 A.2d at 1117).

■ The plain language of the Act defines owner as: "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." PP & L does not have a fee interest in the land, nor is it a tenant or lessee.[7] The RULWA does not provide specific definitions for the terms "occupant" or "person in control of the premises." However, "occupant" is commonly defined as "one who has possessory rights in, or control over, certain property or premises." *Black's Law Dictionary*, 8th ed. (2004), at 1108. The term "control" is commonly defined as "the power or authority to manage, direct, or oversee;" "to exercise power or influence over;" "to regulate or govern." *Id.* at 353.

■ Based upon these commonly accepted meanings of the relevant terms, PP & L clearly is an occupant of the property in question, as it regularly maintained the electrical facilities on the property and used a dirt road along its utility line, on

---

7. Arguably, however, the holder of an easement has a greater interest than a tenant or a lessee. An easement is defined as: "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Black's Law Dictionary*, 8th ed. (2004), at 1108.

the land contained within its easement. These activities demonstrate that PP & L has possessory rights in and daily control over its easement. PP & L can also be considered a "person" in control of the premises, as it placed a gate at the end of the dirt road to limit the ingress and egress of vehicles on the easement. PP & L demonstrated, by placement of the swing-arm gate, that it could further limit use of the land if it chose to, potentially undermining the purpose of the RULWA. However, it chose to leave the land open. In other words, PP & L has authority to manage the land and regulate its use. The easement agreement between PP & L and Lackawanna provides further support for this finding. The agreement provides PP & L with "a permanent easement over, under and upon a strip of land generally seventy (70) feet in width for the purpose of operating, maintaining and reconstructing the existing transmission lines upon, over, along and under the said seventy (70) foot strip; also the right to cut down, trim and remove and keep cut down and trimmed by mechanical means or otherwise, any and all trees within the said strip or adjoining the same which in the judgment of the Electric Company menace the electric line." Agreement, Reproduced Record, at 553.

We agree with PP & L that further support for this plain language determination is found in the Restatement (Second) of Torts, Section 328E, which defines "possessor of land" as:

(a) a person who is in occupation of the land with the intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

In matters involving possessor liability for injuries upon the land, this Court has determined that an owner of an easement is generally considered a possessor of property and is required to maintain its easement. Accordingly, this Court

has held that an easement holder is subject to the same liability as any other possessor of the premises. *See Felger v. Duquesne Light Co.*, 441 Pa. 421, 273 A.2d 738 (1971) (easement holder held to same liability as "possessor" of land under Section 339 of Restatement (Second) of Torts (1965), dealing with artificial conditions highly dangerous to trespassing children); *Cooper v. City of Reading*, 392 Pa. 452, 140 A.2d 792 (1958) (same); *see also Leichter v. Eastern Realty Co.*, 358 Pa.Super. 189, 516 A.2d 1247 (1986) (retailer holding easement over commercial parking lot co-extensive with easements held by other retailers had sufficient control over property to incur liability to invitees under Restatement (Second) of Torts, Section 344, concerning business premises open to the public).[8] Where an easement holder is considered a possessor under Restatement § 328E, and thereby would be exposed to the risk of liability for injuries suffered on the land, it would be motivated to curtail public access to land under its control. As a matter of logic, a party with sufficient control over the land as to be exposed to liability should also be deemed entitled to the protections the RULWA offers to owners who open their land for public use. As pointed out by the Superior Court, to recognize potential tort liability in an easement holder, but to deny the RULWA's ordinary negligence tort immunity to that same entity, would substantially undermine the stated purpose of the RULWA. Recognizing an easement holder as an "occupant or person in control" ameliorates this potential threat to continued public access to private land under the RULWA, and avoids a contrary and absurd result. Accordingly, if an easement holder exercises sufficient control to be subject to liability as a possessor, he must also be

8. We recognize that the degree of control imparted by an easement "varies with the terms of the easement and the manner in which the easement is exercised." *Leichter*, 516 A.2d at 1252. Thus, not all easement holders will necessarily be considered possessors of the land. It is only where an easement holder exercises sufficient control over property that it would be deemed a possessor under the RULWA and Restatement § 328E. In this case, both the easement agreement between PP & L and Lackawanna, and PP & L's actual conduct, prove that it was a possessor of the property subject to the easement.

afforded the protections that the RULWA provides to occupants and persons in control of the land.

The Stantons' reliance on case law from other jurisdictions is unpersuasive, both because we deem the plain language of the statute to be controlling and because, in any event, the cases cited by the Stantons are wholly inapposite. As PP & L has aptly noted, the Maryland case (*Fagerhus*) did not address the issue of whether an easement holder was an owner under Maryland's pre-amendment statute, but rather, addressed the issue of whether a property manager with a contractual duty to manage and maintain the premises of a land owner would be considered an owner under the amended statute. We also agree with PP & L that the California case (*Jackson*) is irrelevant because the statute there specifically defined "owner" as one who had an estate in real property; the RULWA, on the other hand, includes the language "occupant or person in control of the premises." [9]

Based on the foregoing, we find that PP & L qualifies as an "occupant or person in control of the premises," and accordingly we hold that PP & L is an "owner" of the land under the RULWA. PP & L is therefore entitled to the tort immunity protections of the RULWA. We affirm the order of the Superior Court ordering the trial court to enter summary judgment in favor of PP & L. [10]

Chief Justice CAPPY, Justices NIGRO, NEWMAN and SAYLOR, EAKIN and BAER are with the opinion.

9. Notably, an Illinois case, *Robinson v. Illinois Power Co.*, 338 Ill. App.3d 1088, 273 Ill.Dec. 618, 789 N.E.2d 792 (2003), which was submitted to this Court post-briefing, supports our statutory conclusion. The court there held that a power company need not have ownership rights in property to be considered an occupant, but instead could be considered such by placing and maintaining power poles and lines on the property. As an occupant, the power company was deemed to be entitled to immunity under an Illinois statute protecting occupants from personal injury claims filed by snowmobilers.

10. We are aware that there was a third legal question essential to the grant of summary judgment in favor of PP & L, as to which no appellate review has been afforded: the question of whether the swing-arm gate qualifies as "land" for purposes of RULWA immunity. Although the trial court addressed the issue in its opinion denying

summary judgment, ruling as a matter of law in favor of PP & L, the Superior Court did not, even though both parties addressed the question. Nor did the Superior Court explain why it did not address the question. No doubt, the Superior Court ignored the issue because it had been resolved in PP & L's favor, and the Stantons did not separately seek to appeal the interlocutory order; as a technical matter, the issue was not properly before the court.

Since the Stantons were the prevailing party in the trial court, albeit on other issues, they were under no obligation to pursue an interlocutory appeal by permission to secure review of this third issue. The Superior Court's mandate in this case, which this Court affirms, directs the trial court to enter summary judgment in favor of PP & L. Upon entry of that order, the Stantons will be out of court, and will be free, if they so desire, to seek to appeal that final order to secure appellate review of the question concerning the swing-arm gate.